Henry F. Bennett
v.
John W. Teetzel.

*Contracts—Conditions—Well—Digging of—Recovery for—Instructions.*

In an action brought to recover upon a contract for digging a well, this court declines, in view of the evidence, to interfere with the verdict in behalf of the plaintiff.

[Opinion filed December 16, 1889.]

Appeal from the Circuit Court of La Salle County; the Hon. Charles Blanchard, Judge, presiding.

Messrs. Griggs & Allen, for appellant.

Mr. J. J. Conway, for appellee.

Lacey, J.   This suit was originally commenced before a justice of the peace by appellee against appellant to recover on a contract as follows:

" Ottawa, Oct. 22, 1886.

"Four months after date I promise to pay to John W. Teetzel the sum of eighty-six dollars, providing the well for which this note is given continues to furnish me at the rate of ten barrels of water per day, at the rate of six per cent from date, if not paid when due.

"H. F. Bennett."

But the words, " Continues to furnish me ten barrels of water per day," which is inserted by way of condition in the note, must be understood, when read in the light of the contract as originally made and the interpretation of the parties afterward put upon it, to mean, that if the well did not continue to furnish the required quantity of water, the appellee had the privilege of fixing it so that it would.

This note or contract was given to settle up a matter of sinking a well for appellant by appellee. The first contract was that appellee was to sink and curb a well for him that would furnish him sufficient water to water his stock, for which appellant was to pay $100, and appellant to board appellee and a man to help him, to buy and haul the curbing, which was to be of sewer pipe, but was to deduct the cost of the sewer pipe from the cost of the well.

The well was put down, sewer pipe was sunk to hard pan, which was over three feet through, and then they struck a vein of gravel and water which arose about twenty feet in the well. They went then nearly through the water, and Mr. Bennett went to Utica for pipe sufficiently large to pipe this small hole, but when he got it they found it too large and they made a wood curbing of seasoned pine battings, but made no allowance for the timber swelling, if fitted in tightly. The appellee thinks that if there is any trouble about the well it was caused by the wooden pipe swelling and shutting out the water. The man appellee had to help him, tested it by drawing out water half a day and did not lower the water an inch. Appellee, who lived in Michigan, was going back to his home and wanted his pay. They therefore settled the well deal by giving the note in question. Appellee went back to Michigan and on the 15th December, 1886, appellant wrote to him telling him if he wished to do anything with the well, please have it done soon; that he was in need of water and then was a good time to test the well; that he had put in a pump, that he found the present hole would give them ten pails a day and that tasted of the curb so the horses would not drink it.

About the 10th or 12th of January, 1887, appellant shipped his well machine from Michigan and came on himself to fix the well, and after arriving at Ottawa he went right out to appellant's house. Now what occurred here is one of the main contested points of the case and may have been the one upon which the jury decided it. It was contended by appellee, that at appellant's request he went out to his house as requested, ready and prepared to remedy any defect in the

well, and that appellant, after he had been there one and one-half days, absolutely refused to allow him to fix the well, and appellee swears that appellant then said to him: " Teetzel, I don't want you to touch this well ; it is all right you know, as it is for house use and we will have it remain so." That was all the conversation between them as appellee swears. On cross-examination he further testified appellant gave him no other reason for not having the well fixed except that it was cold weather and he had made up his mind not to have it touched. Afterward, on February 19, 1887, appellant wrote ,appellee another letter requesting him to come and take out the sewer pipe and pay the $14 due him. It is true appellant testified differently to the effect that he only told appellee that he wanted him to wait till the ground got loose, that the weather was too cold for men to work to advantage, and besides his wife could not possibly take care of appellee then; that they had no girl and could not get help, etc. The defendant was somewhat corroborated by James Ramsey, a workhand of appellant's, but he did not, as he says, pay attention to what was said. This evidence was fairly submitted to the jury, and in addition to appellee's evidence that he was absolutely refused the privilege to fix the well, there was the letter of appellant dated in February, repudiating the contract entirely, requesting the well to be taken up, and demanding $14 to be paid him for the sewer pipe furnished by him. This did not have the appearance of showing that appellant wanted the well fixed even when the ground got loose and his wife got help, as he had testified. This letter was written after he had put appellee to the trouble and expense of coming from Michigan to La Salle county, Illinois, to fix the well, and then sent him away after refusing him the liberty to do so. This had a tendency to show bad faith on appellant's part and the jury, no doubt, so considered it, which we think they had a right to do from the evidence. The appellee showed himself ready and willing to fill his contract to the letter. If the jury found this issue in appellee's favor, that establishes the fact that it was appellant's own fault that the well did not furnish the desired quantity of water. It was in evidence also that

the pump pipe which appellant put in was only about sixty-
five feet long and the well eighty-six feet deep.    The appel-
lant put in this pump himself.    If there was any failure in the
supply of water because the pump pipe was not long enough,
that was appellant's own fault and was a question the jury
had a right to consider.    We have examined the instructions
carefully and find as a whole they fairly present the law in
the case and no material error was committed by refusal of
appellant's refused instructions.

   The judgment is affirmed.

                                    *Judgment affirmed.*